## Connelly Estate

*Edward J. Ozorowski* and *Joseph F. McVeigh,* for accountant.

*Henry Stuckert Miller* and *Edward T. Maguire,* for beneficiaries.

*J. Brooke Aker,* guardian and trustee ad litem.

TAXIS, P. J., July 31, 1963—Emma J. Connelly died on March 13, 1961, leaving a last will and testament bearing date July 6, 1956, with codicil thereto bearing date July 10, 1956, both duly probated on March 29, 1961, on which the present letters were granted to the accountant, who was appointed executor.

After bequeathing articles of wearing apparel, jewelry, furniture, books, pictures, silver, plate, china, consumable stores, and all household effects of every kind and character as well as automobiles, testatrix in the fifth item of her will gave the residue of her estate one-quarter to her son, John P. Connelly, Jr., absolutely, and the balance or three quarters of said residue, she gave, devised, and bequeathed to her trustees to pay the income arising therefrom in equal shares to her four daughters, Constance Casey, Josephine Huhn, Marie Louise Murray, and Jeanne Patricia Conway, quarterly, for and during the terms of their respective lives, with further provisions to take effect at the death of each of her said daughters. . . .

The accountant and the Girard Trust Corn Exchange Bank join in a request to the court to award the residuary trust estate set up for decedent's daughters as four separate trusts, rather than one trust. The reasons advanced for this are two fold: first, that the trustees will have discretion to invade principal in varying amounts under varying circumstances, which could cause substantial accounting problems in a single trust; and second, that the financial circumstances of the four beneficiaries are substantially different making flexibility in investment policy desirable. All four of the daughters join in this request.

Section 991 of the Fiduciaries Act of April 18, 1949, P.L. 512, confers authority on this court, ". . . for cause shown and with the consent of all parties in interest, [to] . . . divide a trust into two or more separate trusts." In so providing, it effected a change in existing case law, as exemplified by Laucks Estate, 358 Pa. 369. The problem at hand, therefore, is somewhat new, and comparatively little has been said by the courts to delineate the circumstances under which it is proper to divide a trust, or the factors which should be considered in that connection. Some help may be obtained from Sharples Trust, 10 D. & C. 2d 369, 7 Fiduc. Rep. 153. In that case, the settlor of an inter vivos trust created one trust, to pay income in equal shares to his three children and for other purposes. The children were constituted trustees for themselves and requested that the court divide the trust into three separate trusts. Three reasons were advanced. First, the trustee-beneficiaries had assumed personal liability for gift taxes, pledging trust assets as well, and each preferred to diversify his liability differently. Second, each desired to diversify, but in a different fashion. Finally, the trustee-beneficiaries had diverse residences, and found joint administration of the trust awkward. The court con-

cluded that these were valid and sufficient reasons for the requested division, and so decreed.

Here, the record reveals that the financial circumstances of the four daughters are indeed varied. Mrs. Constance C. Casey, the oldest, is the recent widow of Samuel Casey, who left an estate of about one million dollars; her children are adult and married. Mrs. Josephine C. Huhn is also a widow, but is employed at some $57.50 per week, her only income other than from this estate; her children are also married. Mrs. Mary Louise Murray, on the other hand, has six minor children, and the combined family assets are about $85,000. And Mrs. Jeanne C. Conway, the youngest, also lives with six minor children and her husband, there are two adult children as well; the family income is approximately $7,500 per year, other than from this estate.

The Girard Trust Corn Exchange Bank, the corporate trustee, foresees the necessity to invade principal in varying amounts and at varying times for the four beneficiaries. At best, such uneven invasions may cause accounting problems, and will possibly foment future disputes between the beneficiaries. The need for different investment policies can also be foreseen; for one beneficiary, maximum dollar income might be imperative, while for another, nontaxable income might serve better.

The comments of the Joint State Government Commission appended to the text of the Fiduciaries Act of 1949 in 20 PS §320.991, are especially relevant to this case. They state in part:

"It [§991] may serve a useful purpose in making it possible for different investment policies to be followed for different groups of beneficiaries whose needs are different. For example, one group because of substantial income from other sources may be better served by investment in low interest tax free bonds. Also adminis-

trative difficulties may be reduced where there is a right to invade principal, and where frequent accountings are required because of changes of status of income beneficiaries . . . It is to be noted that the division can occur only when all parties in interest consent. Those not able to consent could be represented by guardians or by trustees ad litem."

It appears, therefore, that many of the factors contributing to the enactment of section 991 are here present, and that on the merits the trust should be separated as requested.

The guardian and trustee ad litem, however, does not consent to the proposed division. The reason for his opposition is set forth succinctly in his report. He states:

"Examination of the will and the terms of this trust indicates that testatrix clearly intended one single trust for the benefit of all four daughters, with a separate share for the issue of each daughter to be carved out only upon the death of each daughter . . .

"It seems clear that the stipulation is contrary to the intent expressed by the testatrix."

The guardian and trustee ad litem does not contend that the administrative and investment reasons discussed earlier as bases for separation are not valid. He also concedes the impossibility, at this time, of determining what effect, good or bad, the proposed separation would have on the interests he represents. His opposition is based solely on a contrary testamentary intent.

In the light of the simple and direct language of section 991, it may be conceded for present purposes that any party beneficially interested in a trust could withhold his consent to its division, without having to justify his attitude to the court. A guardian and trustee ad litem, however, is in a different position for his

interest.is solely that of protection for his immature or non-existent wards. He is at all times under the supervision or control of the court appointing him: Kenna Estate, 348 Pa. 214; Bertinelli v. Galoni, 331 Pa. 73. The court may review his actions and decisions, and, where his conclusions are questioned by other parties, should determine their correctness on the merits: Posey's Estate, 52 D. & C. 127, 60 Montg. 142.

The court agrees with the guardian and trustee ad litem that testatrix clearly expressed an intent to have one and not four trusts. This, however, is not a sufficient reason in itself for him to withhold his consent to this proceeding, for it may fairly be assumed that this is always the case where the provisions of §991 are invoked. The purpose of the statute is to expedite and simplify the operation of trust estates, and opposition to its application (at least by an arm of the court) should be based on reasons pertaining to such operation. Consequently, the application of accountant and the Girard Trust Corn Exchange Bank for the separation of the daughters' trust into four separate trusts in approved. . . .